**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| **CHARLES J. HARRIS AND** : | |
| **SARA P. HARRIS,** : | |
| : | |
| **Plaintiffs,** : | |
| : | **Civil Action No.** |
| **v.** : | **4:04-cv-159 (HL)** |
| : | |
| **FLINT LEE HOUSTON,** : | |
| **STONIE LEE HOUSTON, and** : | |
| **UNITED SERVICES AUTOMOBILE** : | |
| **ASSOCIATION,** : | |
| : | |
| **Defendants.** : | |

## ORDER

Before the Court are Defendants' Motion for Summary Judgment (Doc. 41), United Services Automobile Association's[1] ("USAA") Motion for Partial Summary Judgment

---

[1] Under Georgia Law, an individual attempting to recover under his or her uninsured or under insured motorist insurance policy files suit naming the uninsured or under insured motorist as a defendant. O.C.G.A. § 33-7-11 (d) (2000). The insured also serves an additional copy of the complaint upon his or her insurance carrier. Id. The insurance carrier then has two options. Id. The carrier may "participate indirectly in the proceedings, without becoming a named party, by filing pleadings or taking other action allowable by law, in the name of the [uninsured or under insured motorist]." Home Indemnity Co. v. Grace W. Thomas, 178 S.E.2d 297, 298 (1970). The carrier may also choose to "participate directly in its own name in the proceedings by filing pleadings or taking other action allowable by law . . .." Id. If the carrier chooses the latter option, the carrier assumes the status of a named party. Id. Here, USAA has chosen to file pleadings in its own name. Therefore, USAA has assumed the status of a named party, even though USAA was not originally named as a party to this action.

(Doc. 52), and Defendants' Motion to Strike (Doc. 51). For the reasons discussed herein, Defendants' Motion for Summary Judgment is denied, USAA's Motion for Summary Judgment is denied, and Defendants' Motion to Strike is denied.

## I. FACTS AND PROCEDURAL HISTORY

Viewing the facts in the light most favorable to the nonmovants, the Court finds as follows. On April 1, 2003, Plaintiff Charles J. Harris and his wife, Plaintiff Sara P. Harris, were traveling along Georgia Highway 50 when they were stuck from behind by a 1998 Ford Contour ("Ford") driven by Defendant Stonie Lee Houston ("Stonie Houston"). On December 16, 2004, Plaintiffs filed suit against Defendant Stonie Houston and her father, Defendant Flint Lee Houston ("Flint Houston"), seeking damages for personal injury and property damage allegedly caused by the collision.

### A. Ownership and Control of the Ford

In 2000, Defendant Flint Houston purchased the Ford for his daughter, Defendant Stonie Houston, as she was a minor at the time and had no credit history. The Ford was titled in Defendant Flint Houston's name, and he secured a loan with Ford Motor Credit to finance the vehicle. Defendant Flint Houston was legally entitled to exercise control of the Ford, although the extent to which he exercised this power is in dispute. Defendant Flint Houston admits that he drove the Ford on occasion, but asserts that Defendant Stonie Houston's permission was always obtained prior to doing so.

In addition, Defendant Flint Houston secured and was responsible for the premium

payments of the insurance policy covering the Ford at the time of the collision. The policy listed Defendant Flint Houston as the named insured, and the only drivers listed under the policy were Defendant Flint Houston and his wife. Defendant Stonie Houston was neither named as an insured nor a covered driver, and there is no evidence in the record which suggests that Defendant Stonie Houston contributed to the policy's premiums. Further, Defendant Flint Houston was the only individual under the policy with authority to authorize the use of the vehicle and was compensated under the insurance policy for the Ford's residual value after the accident.

At the time of the collision Defendant Stonie Houston was twenty years of age, lived at home with her parents, and was en route to obtain food for the Houston family. It is clear that Defendant Stonie Houston had some authority to use the vehicle; however, whether she exercised exclusive control of the vehicle is in dispute. Finally, Defendant Stonie Houston was responsible for at least some of the Ford's operating expenses, but Defendant Flint Houston admits he also contributed to the expenses.

**B. Plaintiff Charles Harris s' Insurance Coverage**

At the time of the accident, Plaintiff Charles Harris held an automobile liability insurance policy from Defendant USAA. The automobile policy, in addition to providing liability coverage, provided uninsured or under insured motorist ("UM") coverage in the amount of $300,000 for injury to any one person and $500,000 total per accident. Plaintiff Charles Harris also held, at the time of the accident, an umbrella insurance policy from

USAA, which provided $1,000,000 of liability coverage per occurrence. Plaintiff Charles Harris has held the automobile liability insurance policy with USAA since 1972 and a umbrella insurance policy with USAA since at least 1985.

Insurance records submitted to the Court show that Plaintiff Charles Harris's umbrella insurance policy was renewed for a one year period on the 20th of every July. In addition, on June 5, 1985, Plaintiff Charles Harris rejected uninsured motorist coverage as to the umbrella insurance policy by executing an uninsured motorist coverage rejection form, prepared by USAA. Plaintiff Charles Harris later executed a second uninsured motorist rejection form on June 8, 1992. This form was also prepared by USAA and only applied to the umbrella insurance policy.

**C. Procedural History**

Defendant Flint Houston has filed a Motion for Summary Judgment arguing he is entitled to judgment as a matter of law because Plaintiffs failed to allege a proper basis in the complaint for liability and, in the alternative, cannot establish the facts necessary to recover under Georgia's Family Purpose Doctrine. Defendant USAA has also filed a Motion for Summary Judgment. Defendant USAA seeks a partial summary judgment based on the assertion that Plaintiff Charles Harris rejected uninsured motorist coverage under his umbrella insurance policy in 1992. Finally, Defendant Flint Houston has also filed a Motion to Strike, in which he argues that the affidavit of Trooper First Class J.G. Tanner ("Trooper Tanner") submitted by Plaintiff Charles Harris on November 22, 2005,

is not properly authenticated, relies upon inadmissible evidence, and includes facts outside of the affiant's knowledge. As Defendant Flint Houston's Motion to Strike has the potential effect of excluding certain evidence from the Court's consideration in ruling on the pending summary judgment motions, it will be addressed first.

## II. ANALYSIS

### A. Defendant Flint Houston's Motion to Strike

"[A] motion to strike is only appropriately addressed toward matters contained in the pleadings, Fed. R.Civ. P. 12(f), and affidavits submitted in support of a motion are clearly not within that category." Smith v. Southeastern Stages, Inc., 479 F. Supp. 593, 594 (N.D. Ga. 1977). See also Newsome v. Webster, 843 F. Supp. 1460 (S.D. Ga. 1994) (finding motion to strike to be inappropriate procedure for challenging the content of affidavits); Morgan v. Sears, Roebuck & Co., 700 F. Supp. 1574, (N.D. Ga.1988) (noting United States District Court for the Northern District of Georgia does not entertain motions to strike affidavits). "Rather than filing a motion to strike under Rule 12, the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony." Morgan, 700 F. Supp. at 1576.

In view of the forgoing, Defendants' Motion to Strike is denied. Yet, Defendants correctly assert that the Court may only consider admissible evidence when deciding a Motion for Summary Judgment. Therefore, the Court will consider Defendants' challenges as objections and assess the admissibility of Trooper Tanner's Affidavit as part of its

consideration of the pending summary judgment motion in the case.

**B. Pending Motions for Summary Judgment**

1. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, a Court must evaluate all evidence and any logical inferences in the light most favorable to the nonmoving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of [Federal Rule of Civil Procedure] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. "Only when that burden has been met does the burden shift to the non-moving party

to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. The nonmoving party must put forth more than a "mere scintilla of evidence." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). "[T]here must be enough of a showing that the jury could reasonably find for that party." Id. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Thus, under Rule 56, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

2. Defendant Flint Houston's Motion for Summary Judgment

Defendant first argues that Plaintiffs' Complaint fails to specify the Family Purpose Doctrine as a theory of recovery and makes no specific allegations regarding his authority and control over the Ford. Because a specific theory of liability is not stated in the complaint, Defendant contends that Plaintiffs have failed to present a viable claim. The Court does not agree. A complaint is only one part of the entire record to be considered in a motion for summary judgment, and the technical wording of a complaint

7

in isolation is generally not a sufficient basis for granting summary judgment. Other materials, such as depositions, interrogatories, and affidavits are must also be considered.

Furthermore, "a complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food & Commercial Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989). See generally Fed. R. Civ. P. 8(a). This liberal pleading standard is employed so that discovery may serve its proper function. "The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Thus, Plaintiffs' diffuse allegation of liability does not by itself render the claim lifeless, as the appropriate theory of liability may not become apparent until the parties have enjoyed sufficient time for discovery.

In the alternative, Defendant also argues that even if Plaintiffs properly stated a claim under Georgia's Family Purpose Doctrine, no genuine issue of material fact exists to support such a claim. Defendant asserts the undisputed evidence warrants a finding that he can not be found liable under the Family Purpose Doctrine as he did not exercise authority and control over the Ford.

Under Georgia's Family Purpose Doctrine, "[e]very person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and

within the scope of his business, whether the same are committed by negligence or voluntarily." O.C.G.A. § 51-2-2 (2000). Liability under this section is based on the theory that when an individual furnishes an automobile for the pleasure, comfort, or convenience of his family, "a member of the family operating the vehicle is doing so within the scope of the owner's business, under the law of principal and agent and of master and servant." Studdard v. Turner, 85 S.E.2d 537, 541 (Ga. Ct. App. 1954).

Establishing a negligence claim for damages under the family purpose doctrine is a two step process. As a threshold matter, four conditions must be established for the doctrine to apply to a given situation. These conditions are as follows: (1) the defendant must own or have an interest in or control over the automobile; (2) the defendant must have made the automobile available for family use; (3) the driver must be a member of the defendant's immediate household; and (4) the vehicle must have been driven with the permission or acquiescence of the defendant. Gaither v. Sanders, 587 S.E.2d 512, 513 (Ga. Ct. App. 2003). Once these conditions have been established, the doctrine is then applied to render a defendant vicariously libel only if the defendant had the right to exercise authority and control over the vehicle. Bailey v. Butler, 406 S.E.2d 97, 99 (Ga. Ct. App. 1991). Further, as the imposition of liability under the doctrine is based on agency principles, a defendant's right to exercise authority and control is only sufficient to impute liability if "it may be concluded that an agency relationship existed between [the defendant] and the family member with respect to the use of the vehicle." Quan v.

9

Johnson, 379 S.E.2d 426, 427 (Ga. Ct. App. 1989).

Even assuming the four conditions necessary for the family purpose doctrine to apply could be established, multiple factual disputes regarding Defendant Flint Houston's alleged authority and control over the Ford preclude summary judgment in this case. Evidence in the record shows that Defendant Flint Houston procured the vehicle and the loan used to purchase the vehicle, contributed to the Ford's operating expenses and insurance premiums, failed to have Defendant Stonie Houston listed on the insurance policy as an authorized driver, and used the vehicle on occasion. Given this evidence, a reasonable jury could find that Defendant Flint Houston had the right to exercise such authority and control over the Ford that an agency relationship existed with respect to the vehicle. Therefore, the alleged liability of Defendant Flint Houston must be determined by a jury, and Defendants' Motion for Summary Judgment must be denied.

3. USAA Motion for Summary Judgment

In moving for partial summary judgment, USAA argues that because Plaintiff Charles Harris executed valid written rejections of UM coverage under the umbrella policy in 1985 and 1992, Plaintiff Charles Harris's UM coverage is limited to the $500,000 liability policy. Plaintiff Charles Harris admits that the rejection forms bear his signature, but argues that subsequent changes in the statute governing the rejection of UM coverage render both the 1985 and the 1992 rejections invalid.

Louisiana, like many states, requires that every automobile liability policy issued

or delivered in the state include uninsured and under insured motorist coverage unless the coverage is specifically rejected by the insured. See La. Rev. Stat. Ann. § 22:680 (2004). Because the purpose of mandatory uninsured and under insured motorist coverage is to provide recovery to victims of inadequately insured tortfeasors, the statutory guidelines governing the rejection of coverage are liberally construed in favor of coverage. Dyress v. Am. Nat'l Prop. & Cas. Co., 886 So.2d 448, 453 (La. App. 1st Cir. 2004). Therefore, absent a rejection that is unambiguous and conforms to the formal statutory guidelines, uninsured or underinsured motorist coverage will be read into the policy. Taylor v. Rowell, 736 So.2d 812, 816 (La. 1999).

Prior to a statutory amendment in 1997, a rejection of UM coverage was only valid if made on a form designed by each insurer. See 1987 La. Acts 436. Further, a renewal, reinstatement, or substitute policy did not require the completion of a new UM rejection form provided the insured had previously executed a valid rejection of coverage in connection with the policy. See 1988 La. Acts 203. In 1997, the UM statute was amended to provide that a valid rejection of UM coverage must be made on a form prescribed by the commissioner of insurance, rather than on a form designed by each insurer. 1997 La. Act 1476. In addition, the following sentence was added: "Any form executed prior to the effective date of this Act shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection." Id.

In 1999, the UM statute was again amended. 1999 La. Acts 732. This amendment changed the wording of the section of the statute that stated that a new UM rejection form was not required for renewal, reinstatement, and substitute policies. Id. The languages is as follows:

> The form signed by the insurer . . . which initially rejects coverage . . . shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, . . . do not create a new policy and do not require the completion of new uninsured motorist selection forms.

Id. Nevertheless, the provision of the statute that specified that rejections executed, on forms other than the form prescribed by the commissioner of insurance, prior to the effective date of the 1997 amendment would only remain effective until the policy renewal date was left intact. Id.

The UM statute was also amended in 2003 when the statute was redesignated as La. Rev. Stat. Ann. § 22:680. 2003 La. Act 456. In addition to renumbering the section pertaining to the rejection of UM coverage, the amendment also removed the provision that stated that rejections executed on a form designed by the insurer rather than on the form prescribed by the commissioner of insurance were valid only until the policy renewal date. Id. The Court notes that at the time of this amendment, the form prescribed by the

commissioner of insurance had been required for approximately six years. See 1997 La. Act 1476.

When addressing the validity of rejections executed prior to substantive legislative changes, Louisiana courts consistently hold that the validity of the rejection is determined by the law in effect at the time the form was executed. See Dyess, 886 So.2d at 451; Reno v. Travelers Home and Marine Ins. Co., 867 So.2d 751 (La. Ct. App. 2003); Roger v. Estate of Moulton, 513 So.2d 1126, 1131-23 (La. 1987). In addition, "it is the date of issuance of the [policy, policy renewal, or policy substitution] which determines the applicable law, not the date of the accident or event triggering the cause of action." Collins v. Employers Ins. of Wausau, 402 So.2d 158, 160 (La. Ct. App. 1981). See also LeBoyd v. Louisiana Transit Co., 375 So.2d 749, 751 (La. Ct. App. 1979); Breaux v. Gov't Emp. Ins. Co., 373 So.2d 1335, 1337 (La. Ct. App. 1979).Therefore, whether a rejection is valid is determined by the law in effect when the rejection was executed; however, whether a new rejection is required for a subsequent policy, renewal policy, or substitute policy is determined by the law in effect when the policy is issued.

In this case, it is undisputed that Plaintiff Charles Harris executed a valid rejection on June 8, 1992. Because renewal policies generally do not require the completion of a new UM rejection form provided a valid form has been executed in connection with the policy, Plaintiff Charles Harris's 1992 rejection remained valid for all subsequent renewal policies until at least 1997. In 1997, the Louisiana Legislature amended the statute

governing the rejection of UM coverage. The amendment specified that all rejections executed prior to September 6, 1998, the effective date of the Act, would remain valid only until the policy's renewal date. Thereafter rejections were to be executed only on the form prepared by the commissioner of insurance.

Accordingly, Plaintiff Charles Harris 's 1992 rejection remained valid until July 20, 1999,[2] when the policy was due to be renewed. Thereafter, Plaintiff Charles Harris was required to execute a new rejection on a form designated by the commissioner of insurance. Because a new rejection form was not executed, the renewal policy that issued on July 20, 1999, included the statutorily required UM coverage. The same is true for the policies that issued on July 20, 2000, July 20, 2001, and July 20, 2002. The automobile collision in this case occurred on April 1, 2003, and is covered by the policy that issued on July 20, 2002. Although the statute governing UM rejection was subsequently amended, on June 20, 2003, to remove the provision requiring new rejections, the amendment occurred after the policy covering the collision was issued, and as such, is not relevant to the current issue. Because Plaintiff Charles Harris did not reject UM coverage with respect to the umbrella liability insurance policy that issued July 20, 2002, the policy includes statutorily required UM coverage as required by Louisiana law.

---

[2]Plaintiff Charles Harris 's policy was renewed each year on the twentieth of July. The next policy renewal date after September 6, 1998 was July 20, 1999.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 41) is denied, USAA's Motion for Partial Summary Judgment (Doc. 52) is denied, and   Defendants' Motion to Strike (Doc. 51) is denied.

**SO ORDERED**, this the 26th day of September, 2006.

**/s/ Hugh Lawson**

**HUGH LAWSON, Judge**

gac/scs